Fredric L. Shenkman, Esq.
(New Jersey 011361979)
*fshenkman@cooperlevenson.com*
COOPER LEVENSON, P.A.
1125 Atlantic Avenue - 3rd Floor
Atlantic City, NJ 08401
Telephone: (609) 344-3161
Facsimile: (609) 344-0939
ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (CAMDEN VICINAGE)

| | | |
|---|---|---|
| RAP TECHNOLOGIES LLC | : | |
| | : | |
| Plaintiff | : | Civil Action No. |
| | : | |
| v. | : | |
| | : | |
| GREEN ASPHALT CO., LLC | : | **COMPLAINT** |
| | : | |
| Defendant | : | |
| | : | |

PRELIMINARY STATEMENT

1.   RAP Technologies LLC ("RAP") entered into a Royalty License Agreement ("Agreement")with Green Asphalt Co., LLC.("Green")

2.   RAP, as licensor, licensed certain patented inventions related to asphalt manufacturing systems and methods, together with pollution control systems, to Green, as licensee.

3.   The Agreement licensed patents issuing from the following applications, and all patents which are reissues, divisions, continuations, or extensions of any of the

following: (1) U.S. Patent No. 6,478,461 ("461 Patent"), titled "Transportable hot-mix asphalt manufacturing and pollution control system," and (2) US. Patent No. 6,832,850 ("850 Patent"), titled "Hot-mix asphalt manufacturing system and method."

4.    The Agreement, in Exhibit 1, defines "Confidential Information" or "CI" as detailed below.

5.    The Agreement, in Art. 5.4, provides that neither RAP nor Green, has any "..interest in or right to use the Confidential Information of the other Party except in accordance with the terms of this Agreement. With respect to the Confidential Information of the other Party, each Party shall (a) maintain it in strict confidence and take all necessary steps to prevent its disclosure to third parties, except to the extent necessary to carry out the purposes of this Agreement, in which case these confidentiality restrictions shall be imposed by the receiving Party upon the third parties to whom the disclosures are made, (b) use at least the same degree of care as it uses in maintaining the secrecy of its own Confidential Information (but no less than a reasonable degree of care), and (c) prevent the removal of any

proprietary, confidentiality, or copyright notices placed on the Confidential Information."

6.    The Agreement, in Art. 3, provides that Green is to pay royalties to RAP as detailed in Exhibit 4 of the Agreement.

7.    Exhibit 4 of the Agreement provides that the royalty payments are to be calculated as follows: "6%. Agency Royalty on outside sales is what Green pays Rap technologies on C.A.C. Purchases./Ton." C.A.C. is an entity related to Green.

8.    As detailed in Art. 4 of the Agreement, the term of the Agreement is as follows:

> 4.1 This Agreement shall commence on the Effective Date and continue for the longer of: (a) the lives of the Licensed Patents [defined in Exhibit 2 of the Agreement and in ¶ 3 of this Complaint], or (b) twenty (20) years, unless and until earlier terminated under the provisions of this Agreement (the "Term").
>
> 4.2 Licensee [Green] may terminate this Agreement: (a) for convenience, in whole or with respect to any or all Licensed Patents, by giving sixty (60) days' advance notice in writing to Licensor [RAP], (b) in whole or with respect to any or all of the Licensed Patents, upon written notice to Licensor, if Licensor fails, at any time, to perform any material obligation under this Agreement related to the Licensed Patent(s) and does not cure such breach within thirty (30) days after receipt of written notice from Licensee specifying the nature of such breach, or (c) in whole, upon written

notice to Licensor, if Licensor fails, at any time, to perform any material obligation under this Agreement related to the Equipment as set forth in Exhibit 7 and does not cure such breach within thirty (30) days after receipt of written notice from Licensee specifying the nature of such breach.

4.3 …

4.4 No termination or expiration of this Agreement, in whole or in part, shall relieve either party of any obligation or liability accrued hereunder prior to such termination or expiration. The provisions of Sections 1.2, 3.1-3.6, 5.1-5.6, and 9.1-9.11 shall survive any termination or expiration of this Agreement.

9.   As such, Green could terminate the Agreement, for convenience, upon sixty (60) days' notice.

10.   Green gave sixty (60) days' notice of termination for convenience which was duly received.

11.   Upon termination of the Agreement, certain obligations of Green continued, to wit: the obligation to pay accrued royalties (Art. 3 of the Agreement) and not to use RAP's CI (Art. 5.5). The foregoing is not meant to be an exhaustive listing of the obligations of Green upon termination of the Agreement.

12.   Despite the foregoing obligations, Green has: (1) not provided the information required by Art. 3.3, 3.4 & 3.5 of the Agreement, which requirements survive termination of the Agreement pursuant to Art. 4.4 of the Agreement;

(2) not paid accrued royalties as required by Art. 3.1 & 3.1, which requirements survive termination of the Agreement pursuant to Art. 4.4 of the Agreement; (3) continued to use and disseminate RAP's CI in violation of Art. 5 of the Agreement, which requirement survives termination of the Agreement pursuant to Art. 4.4 of the Agreement; and (4) not delivered or destroyed RAP's CI pursuant to Art. 5.5 of the Agreement, which requirement survives termination of the Agreement pursuant to Art. 4.4 of the Agreement.

PARTIES

13.   RAP Technologies LLC ("RAP") is a New Jersey limited liability company.

14.   RAP's principal place of business is located at 217 Belhaven Avenue, City of Linwood, County of Atlantic, State of New Jersey.

15.   RAP's managing member is Robert E. Frank ("Frank").

16.   Frank's place of domicile is 217 Belhaven Ave., City of Linwood, County of Atlantic, State of New Jersey.

17.   RAP's only other member is Braen Technologies, LLC ("Braen").

18.   Braen is a New Jersey limited liability company.

19.    Braen's principal place of business is in Haledon, County of Passaic, State of New Jersey.

20.    The sole member of Braen is Stone Industries, Inc. ("Stone"), a New Jersey corporation

21.    Stone's principal place of business is in Haledon, County of Passaic, State of New Jersey.

22.    Green Asphalt Co., LLC ("Green")is a New York limited liability company.

23.    Green's principal place of business is 37-98 Railroad Ave., Long Island City, Borough of Queens, State of New York.

24.    Michael A. Capasso ("Capassso")is the managing member and sole owner of Green.

25.    Capasso's place of domicile is Borough of Manhattan, State of New York.

JURISDICTION

A. Subject Matter Jurisdiction

26.    RAP, and its members, are citizens of the State of New Jersey; to the extent its members are individuals, they are domiciled in New Jersey; to the extent its members are owned by business entities, said business entities are citizens of and have their principal places of business in New Jersey.

27.    Green, and its members, are citizens of the State of
New York; Green's individual member is domiciled in New
York.

28.    The matter is controversy exceeds the sum of
$75,000.00, exclusive of interest and costs.

29.    Pursuant to 28 U.S.C. § 1332(a), this Court has
subject matter jurisdiction

30.    The parties have contractually agreed to the
jurisdiction of this Court pursuant to Art. 9.9 of the
Agreement.

### B. Supplemental Jurisdiction

31.    Pursuant to 28 U.S.C. § 1367(a), this Court has
supplemental jurisdiction over all other claims raised
herein in that said claims are so related to claims in the
action within 28 U.S.C. § 1332(a) that they form part of
the same case or controversy and it would be ordinarily
expected that the claims be tried in one proceeding.

32.    There are no claims being brought by RAP against
persons made parties pursuant to Fed. R. Civ. P. 14, 19, 20
& 24 in violation of 28 U.S. C. § 1367(b).

## C. Personal Jurisdiction

33.    This Court has personal jurisdiction because Green has waived the right to raise a defense related to same. *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979).

34.    More particularly, Green has waived the right to raise a defense based on lack of personal jurisdiction due to its consent in the Agreement which provides, in Art. 9.9, that any and all actions arising out of or relating to the Agreement shall be brought and resolved only in the Federal courts located in either New York County, New York or Camden County, N.J. *Burger King Corp. v. Rudzewicz,* 471 U.S. 472,l N.14 (1985).

### VENUE

35.    Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in New Jersey

36.    Green has waived the right to challenge venue due to its consent in the Agreement which provides, in Art. 9.9, that any and all actions arising out of or relating to the Agreement shall be brought and resoled only in the Federal courts located in either New York County, New York or Camden County, N.J.

- 8 -

CHOICE OF LAW

37.   RAP   and   Green,   in   Art.   9.9   of   the   Agreement,
      contractually agreed that the Agreement shall be governed,
      in  all  respects,  by  the  laws  of  the  State  of  New  York
      without regards to principles of conflicts of laws.

FACTS

38.   On   November   11,   2010   a   Royalty   License   Agreement
      ("Agreement")   was   entered   into   by   and   between   RAP
      Technologies, LLC ("RAP"), as Licensor, and Green Asphalt,
      LLC ("Green") as Licensee.

39.   RAP   owned   certain   patented   inventions   relating   to
      asphalt  manufacturing  systems  and  methods  together  with
      pollution control systems.

40.   Green   desired   to   obtain   from   RAP   certain   rights   as
      relates  to  such  patented  inventions  so  that  Green  could
      commercialize and exploit same.

41.   RAP  was  willing  to  grant  to  Green  certain  rights  for
      purposes  of  commercialization  and  exploitation,  and  Green
      was  willing  to  accept  such  rights,  pursuant  to  the  terms
      and conditions set forth in the Agreement.

42.   Exhibit  1  of  the  Agreement  defines  certain  terms,
      those definitions will be used in this Complaint:

- 9 -

A.  "Claim" means an allowed claim under a "Licensed Patent" that has not expired or been adjudicated invalid.

B.  "Confidential Information" means any and all technical and non-technical information of or related, or belonging, to a Party, whether in written or oral form, including, without limitation, patent, copyright, trade secret, and proprietary information, techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services, key personnel, suppliers, customers, prospective customers, policies and operational methods, plans for future developments, business forecasts, sales and merchandising, and marketing plans and information, in whatever form disclosed or made available, and any other information a reasonable person would deem confidential or proprietary. Confidential Information includes, among others, information which a Party obtains from another party under an obligation of confidentiality, but does not include items that were: (a) possessed by the receiving Party prior to receipt or availability pursuant to this Agreement, other than through prior disclosure or availability by the disclosing Party; (b) independently developed by the receiving Party without the benefit of disclosure or availability of any Confidential Information; (c) published or available to the general public other than through a breach of this Agreement or breach by a third party of its confidentiality obligations to the disclosing Party; or, (d) obtained by the receiving Party from a third party with a valid right to disclose or make available such Confidential Information, provided that such third party is not under a confidentiality obligation to the disclosing Party. A combination of features or disclosures shall

not be deemed to fall within the foregoing exclusions merely because individual features are published or available to the general public or are in the rightful possession of the receiving Party unless the combination is published or is available to the general public or in the rightful possession of the receiving Party.

C.   "Equipment" shall mean: 100% Recycle Asphalt Plant-150 TPH-10,000 gallon above ground fuel and additive storage tank with 150% containment; 8' x 28' Tool trailer and Quality Control Lab; Marshall Test equipment for determination of stability, flow and voids; 7' X 28' Stansteel dryer with Gencor burner; Double Deck Power screen Chieftan 800 screener; and Hazmag impact crusher

D.   "Indemnified Materials" means: any and all damages, losses, judgments, amounts agreed upon in settlement, costs and expenses (including attorneys' fees) that Green may suffer or incur that arise out of, are connected with or result from any third party claim of infringement that the Licensed Patents, RAP's Trade Secrets or Confidential Information or the Products, or any part thereof, infringe upon, violate or misappropriate any intellectual property rights of any non-affiliated entity or person.

E.   "LIC Production Target" means: In the event Green fails to apply for a permit application for an addition plant in the Bronx or Staten Island within two (2) years following the LIC Production Target (defined below) being met, then Bronx and Staten Island will be removed from the definition of the term "Territory" for purposes of this Agreement. The term "LIC Production Target" shall mean the production of 75,000 tons or more of Product manufactured at Green's Long Island City, New York plant between the hours of Monday-Friday, 6:00am-2:30pm in a single calendar

- 11 -

year.   Any manufacturing of Product outside
such days and times shall not apply toward
such LIC Production Target.

F.   "License"    means:    a    royalty-bearing,
exclusive, transferable license, under the
Licensed Patents, during the lives of such
Licensed Patents, to practice and use the
methods and processes described and Claims
therein, and to use all RAP's Trade Secrets
and   Confidential   Information   provided   to
Green hereunder, solely for the purpose of
manufacturing Product for sale by Green
within the Territory (the "License"). The
License shall include the right to improve,
adapt, modify, translate, or enhance any
Licensed Patents and RAP's Trade Secrets and
Confidential   Information (collectively, the
"Improvements").    Any   such   Improvements
shall be exclusively owned by RAP, provided
however, that RAP shall not have a right to
use, license or otherwise exploit such
Improvements    without   the   prior   written
consent or agreement of Green.   RAP reserves
all rights and licenses not expressly and
explicitly granted to Green under the
License.   The License shall only be under
Claims of Licensed Patents, the infringement
of which would occur but for the License.

G.   "Licensed Patents" means: patents issuing from
the following applications, and all patents
which are reissues, divisions, continuations,
or extensions of any of the following
patents: 461 Patent and 850 Patent.

H.   "Offered Territories" means: the area
within a fifty (50) mile radius of Green's
Long Island City, New York location or any
other Green location manufacturing Product.

I.   "Payment Period" means: within thirty (30)
days after the end of: (a) each month,
during the first year of the Term of the

Agreement; and (b) thereafter at the end of each calendar quarter during the remainder of the Term (each a "Payment Period").

J.   "Product" means: asphalt made or manufactured by Green under the Licensed Patents for sale by Green to end users.

K.   "Restricted Period" means: the License granted by RAP to Green pursuant to the Agreement shall be exclusive in the Territory as provided for in Section 1.4(f) of the Agreement commencing on the Effective Date and continuing for a period of three (3) years following the Effective Date.

L.   "Royalties" means: 6%; Agency Royalty on outside sales is what Green pays RAP on C.A.C.'s purchases by the ton.

M.   "Territory" means: the five (5) boroughs of New York City, New York (i.e., Manhattan, Queens, Brooklyn, Bronx and Staten Island), as such term may be amended pursuant to Section 1.4 hereto.

N.   "Trade Secrets" means: any and all of RAP's technical and non-technical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, and processes, product plans, in any form or format, relating to the Licensed Patents, which is not commonly known by or available to the public and which: (a) derives economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

43.   For the year 2011, the total Royalties paid were $37,191.

- 13 -

44.    For the year 2012, the total Royalties paid were
$182,431.

45.    For the year 2013, the total Royalties paid were
$342,762.

46.    For the year 2014, the total Royalties paid were
$387,933.

47.    For the year 2015, the total Royalties paid were
$416,647.

48.    For the first quarter and second quarters of
2016, the Royalties paid were $217,960.65.

49.    By letter dated October 27, 2016, Green provided
notice to RAP that it was terminating the Agreement
for convenience in accordance with Art. 4.2 of the
Agreement.

50.    The notice of termination for convenience was
duly received.

51.    Thus, pursuant to Art. 4.2 of the Agreement, the
Agreement was terminated effective as of December 26,
2016, sixty (60) days after notice.

52.    Green did not supply to RAP, for the third and
fourth quarters of 2016, a complete and accurate
written report containing: (a) the quantity of Product
produced, the quantity of Product sold, and the

quantity of Product for which Green received payment; and (b) the amount of Royalties due to RAP for which Green received payment as required by Art. 3.3 of the Agreement.

53.    Green did not pay to RAP any Royalties for the third and fourth quarters of December 2016.

54.    Although the amount due from Green to RAP as Royalties for the second half of 2016 is impossible to calculate without the information required by Art. 3.3 of the Agreement, averaging the Royalties paid by Green for the years 2012-2015 (2011 is excluded because the Agreement was only in effect for six weeks that year), the additional amount to be paid as Royalties for 2016 is estimated to be $166,221.62.

55.    Alternatively, if the Royalties paid for 2016 were extrapolated for the entire year, the additional amount to be paid as Royalties for 2016 is estimated to be $217,960.65.

56.    Capasso, in a conversation with Frank, admitted that Green continues to manufacture and sell Product and utilize the Licensed Patents, CI and Trade Secrets that were and are subject to the Agreement.

57.    By letter dated January 30, 2017, RAP's

intellectual property counsel advised Green, through Capasso, that: the reports required pursuant to Art. 3.4 of the Agreement had not been supplied for the period through December 2016; that the Royalties due for the period through December 2016 had not been paid as required by Art. 3 of the Agreement; that Green was infringing upon the Licensed Patents because there was no license to use the Licensed Patents once the Agreement was terminated pursuant to Art. 4 & Art. 5 of the Agreement; and that Green was continuing to use RAP's Trade Secrets and CI in violation of Art. 5 of the Agreement.

58.   RAP's Trade Secrets and CI that were and are continuing to be used by Green include, but are not limited to: information relating to cold patch mixtures; the location of recycling agent injection, automation control strategy, and automation use interface.

59.   The January 30, 2017 letter went on to demand: (1) immediate payment of Royalties due and owing; (2) immediate production of the accounting related documents required pursuant to Art. 3 of the Agreement; (3) immediate cessation of the utilization

of RAP's Trade Secrets and CI as required by Art. 1 of the Agreement; (4) confirmation that Green has destroyed or returned information related to RAP's Trade Secrets or CI as required by Art. 5.5 of the Agreement; and (5) an accounting of Green's post-termination use of RAP's patented methods, Trade Secrets and CI; (6) an accounting of and all sales arising out of the use of the foregoing.

60.   Green has failed and refused to comply with any of the demands detailed in the January 30, 2017 letter.

COUNT I

61.   RAP repeats each and every allegation contained in ¶¶ 1-60 of the Complaint and incorporates the same as if herein set forth at length.

62.   Art. 3.3 requires Green to pay to RAP all unpaid Royalties.

63.   Green has violated the terms and conditions of the Agreement by failing to pay Royalties to RAP for the third and fourth quarters of 2016.

64.   As a result of the foregoing, Green has damaged RAP.

WHEREFORE, RAP demands judgment against Green for: damages, interest, costs of suit, attorney's fees to the

extent applicable, and all other relief that this Court
deems just and equitable.

COUNT II

65.    RAP repeats each and every allegation contained in ¶¶
1-64 of the Complaint and incorporates the same as if
herein set forth at length.

66.    Art. 3.3 of the Agreement requires Green to supply to
RAP, at the end of each calendar quarter, a complete and
accurate written report containing the information
specified in Art. 3.4 of the Agreement.

67.    The information required by Art. 3.4 of the Agreement
includes, but is not limited to, the following: (a) the
quantity of all Product produced; (b) the quantity of
Product sold; (c) the quantity of Product for which Green
received payment during the previous Payment Period; and
(d) the amount of Royalties due to RAP for which Green has
received payment during the previous Payment Period.

68.    Despite demand, Green refused and continues to refuse
to provide the information mandated by Art. 3.3 & Art. 3.4
of the Agreement.

69.    The claim against Green pursuant to this Count, and
the relief sought herein, is irreparable and legal relief
will not make RAP whole.

70.    If the injunctive relief sought in this Count is
       granted, the imposition on Green will be less than the
       imposition on RAP if the relief sought is not granted.

       WHEREFORE, RAP demands judgment against Green for: an
       order mandatorily enjoining and restraining it to produce
       the information mandated by Art. 3.3 & Art. 3.4 of the
       Agreement; costs of suit; attorney's fees to the extent
       applicable; and all other relief this Court deems just and
       equitable.

                            COUNT III

71.    Plaintiff repeats each and every allegation contained
       in ¶¶ 1-70 of the Complaint and incorporates the same as if
       herein set forth at length.

72.    Green, despite the termination of the Agreement,
       continues to use RAP's CI and Trade Secrets.

73.    A non-exhaustive list of RAP's CI and Trade Secrets
       still being used by Green include: cold patch mixtures; the
       location of recycling agent injection, automation control
       strategy and automation user interface.

74.    Green is obligated to cease using RAP's CI and Trade
       Secrets pursuant to Art. 1.1, Art. 5.1 & Art. 5.4 of the
       Agreement.

                            - 19 -

75.   Demand was made upon Green to cease using RAP's CI and Trade Secrets.

76.   Green has refused to cease use of RAP's CI and Trade Secrets.

77.   The claim against Green pursuant to this Count, and the relief sought herein, is irreparable and legal relief will not make RAP whole.

78.   If the injunctive relief sought in this Count is granted, the imposition on Green will be less than the imposition of RAP if the relief is not granted. WHEREFORE, RAP demands judgment against Green for: an order enjoining and restraining it from utilizing RAP's CI and Trade Secrets;  costs of suit; attorney's fees to the extent applicable; and all other relief that this Court deems just and equitable.

COUNT IV

79.   Plaintiff repeats each and every allegation contained in ¶¶ 1-78. of the Complaint and incorporates the same as if herein set forth at length.

80.   Art. 5.5 of the Agreement requires, at the termination of the Agreement, that Green, at RAP's option, destroy any and all of RAP's CI then or ever in the possession or control of Green.

81.    Despite demand for the return or the CI or confirmation of its destruction, Green had neither returned RAP's CI nor confirmed its destruction.

82.    The claim against Green pursuant to this Count, and the relief sought herein, is irreparable and legal relief will not make RAP whole.

83.    If the injunctive relief sought in this Count is granted, the imposition on Green will be less than the imposition of RAP if the relief sought is not granted.

WHEREFORE, RAP demands judgment against Green for:  an order enjoining and restraining it to return RAP's CI to RAP or provide confirmation that same has been destroyed; costs of suit; attorney's fees to the extent applicable; and all other relief that this Court deems just and equitable.

### COUNT V

84.    Plaintiff repeats each and every allegation contained in ¶¶ 1-83 of the Complaint and incorporates the same as if herein set forth at length.

85.    Art. 5.4 of the Agreement states that Green has no interest in or right to use RAP's CI except in accordance with the terms of the Agreement.

- 21 -

86.     Pursuant to Art. 5.4 of the Agreement, Green is
        required to maintain RAP's CI in strict confidence and take
        all necessary steps to prevent its disclosure. Green is
        required to use at least the same degree of care it uses in
        maintaining its own CI in maintaining RAP's CI.

87.     Pursuant to Art. 5.4 of the Agreement, Green is to
        prevent the removal of any proprietary, confidentiality, or
        copyright notices placed on RAP's CI.

88.     Green acknowledges, pursuant to Art. 5.6 of the
        Agreement, that: a breach of Art. 5.4 of the Agreement will
        irreparably harm RAP; that RAP will not have an adequate
        remedy at law for such a breach; that RAP will be entitled
        to injunctive relief without the posting of a bond; and
        that the terms and conditions of Art. 5.4 of the Agreement
        are reasonable and necessary to protect the legitimate
        business interests of RAP.

89.     If the injunctive relief sought in this Count is
        granted, the imposition on Green will be less than the
        imposition on RAP if the relief sought is not granted.
        WHEREFORE,  RAP demands judgment against Green for: an
        order enjoining and restraining it to maintain in RAP's CI
        in strict confidence and to prevent the removal of any
        proprietary, confidentiality, or copyright notices placed

on RAP's CI; costs of suit; attorney's fees to the extent
applicable; and all other relief that this Court deems just
and equitable.

Count VI

90.    Plaintiff repeats each and every allegation contained
in ¶¶ 1-89 of this Complaint and incorporates the same as
if herein set forth at length.

91.    Despite termination of the Agreement ending Green's
rights to utilize RAP's Licensed Patents, CI, and Trade
Secrets, Green continues to utilize the aforementioned.

92.    Due to Green's continued use of the Licensed Patents,
CI, and Trade Secrets, RAP is entitled to damages.

93.    The damages due and owing from Green to RAP, as
detailed in this Count, are not ascertainable without Green
providing to RAP an accounting of Green's post-termination
use of the Licensed Patents, CI, and Trade Secrets,
including, without limitation, an accounting of all post-
terminations sales and payments relating to the foregoing.

94.    The injunctive portion of the relief sought pursuant
to this Count is irreparable; legal relief will not make
RAP whole.

95.    If the injunctive relief sought in this Count is granted, the imposition on Green will be less than the imposition on RAP if the injunctive relief is not granted.

96.    RAP has been damaged by Green's use of the Licensed Patents, CL, and Trade Secrets after the termination of the Agreement.

WHEREFORE, RAP demands judgment against Green for: an order enjoining and restraining it to account for any post-termination sales and payments relating to the Licensed Patents, CI, and Trade Secrets; damages; interest; costs of suit, attorney's fees to the extent applicable; and all other relief that this Court deems just and equitable.

Cooper Levenson, P.A.

By: _____
       Fredric L. Shenkman
       Attorneys for Plaintiff

Dated: August 21, 2017

CLAC 4069549.4 60852/00001

- 24 -